FILED
JOHN P. HEHMAN
CLERK

2014 AUG -7 AM 10: 42

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF OHIO, EASTERN DIVISION

Civil Action No. 2:14-cv-00820-EAS-MRA

MALIBU MEDIA, LLC.

*Plaintiff*,

v.

John Doe subscriber assigned to IP address 174.102.111.139,

*Defendant*.

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT JOHN DOE'S MOTION TO QUASH THE SUBPOENA

Defendant, J. Doe ("Defendant") identified at internet protocol ("IP") address 174.102.111.139 on May 19, 2014 at 1:42 UTC, respectfully submits this Memorandum of Points and Authorities in support of Defendant's Motion requesting that the Court quash the subpoena served upon Defendant's Internet Service Provider ("ISP"), Insight Communications.

### INTRODUCTION

As an initial matter, Doe respectfully requests that she be permitted to proceed anonymously in filing this motion. The only way for defendand Doe to protect her rights by way of these motions without identifying herself by name is to proceed anonymously. See 2TheMart.com, 140 F.Supp.2d at 1095-98; Best Western Int'l Inc v. Doe No. CV-06-1537, 2006 WL 2091695 AT *5 (D. Ariz. July 25, 2006). Proceeding anonymously is the only method which will not render moot these proceedings by disclosing the very same information which Plaintiff seeks to obtain through its improper subpoena. Since quashing the subpoena while requiring defendant Doe to proceed in her own name would entirely defeat the purpose of the motion to quash, Doe respectfully requests that the Court allow her to proceed anonymously.

The present case is one of several efforts by certain media organizations to establish a business model that relies on questionable allegations of copyright infringement against a large

number of individuals to generate substantial profits by extracting settlements from thousands of identified Defendants. Given the sensitive nature of certain adult materials and public association therefrom, Defendants are often quick to settle to avoid being named or associated with a lawsuit having to do with adult content. Federal Courts have expressed skepticism toward this business model, including this quote from the Chief Justice of the U.S. District Court for the District of Nevada about Plaintiff's "attempt[] to create a cottage industry of filing copyright claims, making large claims for damages and then settling claims for pennies on the dollar." Righthaven, L.L.C. v. Democratic Underground, No. 2:11-cv-01356 (D. Nev. Apr. 14, 2011), Dkt 94. Other Courts have been less generous, questioning "Plaintiffs who file cases with extremely weak infringement positions in order to settle for less than the cost of defense and have no intention of taking a case to trial. Such a practice is an abuse of the judicial system and threatens the integrity of and respect for the courts." Mem. Op. and Order at 5, Raylon, L.L.C. v. E.Z. Tag Corp., No. 6:09-cv-00357 (E.D. Tex. Mar. 9, 2011), Dkt. 115.

In direct reference to Plaintiff's business model and questionable claims of copyright infringement, Judge Beeler of the U.S. District Court for the Northern District of California, found in regards to Plaintiff Patrick Collins Inc. in a similar Bit Torrent copyright litigation case involving one-hundred-eighty-eight (188) John Doe Defendants and an order to show cause:

> the court has no confidence that Plaintiff has been diligent in moving to name and serve Defendants, despite its (unsworn) claims to the contrary. For example, Plaintiff's counsel states that he has filed ten other copyright cases involving a large number of Doe Defendants. ECF No. 17 at 4. The court reviewed the dockets and noted that the Plaintiffs in these cases have not filed proof of service for even a single Defendant even though a number of Defendants have been identified and dismissed after settling with the Plaintiffs. See, e.g., Media Products, Inc. DBA Devil's Film v. Does 1-1257, Case No. cv 10-04471 RS (complaint filed on October 4, 2010 and no proof of service filed for any Defendant as of July 29, 2011, but four Doe Defendants have been dismissed after settling). This pattern holds true in this case too. Here, Plaintiff has not identified or served any of the 1,219 Doe Defendants. However, on May 10, 2011, Plaintiff filed a stipulation dismissing with prejudice a Doe Defendant who settled with Plaintiff. ECF No. 13 at 1. And, on August 18, 2011, Plaintiff filed a stipulation

dismissing with prejudice more than thirty Doe Defendants who settled. ECF No. at 1-2. The plaintiffs in these cases appear content to force settlements without incurring any of the burdens involved n proving their cases. And, while the courts favor settlements, "filing one mass action in order to identify hundreds of Doe Defendants through pre-service discovery and facilitate mass settlement, is not what the joinder rules were established for." IO Group, Inc. v. Does 1-435, No. C 10-4382 SI, 2011 WL 445043, at *6 (N.D. Cal. Feb. 3, 2011).

Order Dismiss Comp. Patrick Collins, Inc. v. Does 1-1,219, Case 4:10-cv-004468-LB Dkt. No. 27 (D. Cal. 2011) Aug. 29, 2011.

Based on the extraordinarily large number of analogous cases, treated in the same or similar manner by this Plaintiff and others, it appears that such mass copyright litigation lawsuits are a means "to identify hundreds of Doe Defendants through pre-service discovery," then, regardless of any consideration of guilt or innocence seek to coerce largely contingent-fee settlements, sometime through harassing letters and direct phone calls with no real intent to actually litigate such claims. This for-profit business model becomes more obvious when one considers the actual number of Defendants claimed in such action versus the astonishingly low number of actions actually commenced. As of March, 2011, more than 136,000 Does claimed as Defendants in such actions, however, the number of actual copyright infringement actions commenced was less than 100. (Wired Magazine's online spreadsheet prepared from existing court data: http://www.wired.com/images_blogs/threatlevel/2011/03/spreadsheetHfslitHcurrentHvH1.2.01.xls) In point of fact, Plaintiff is now responsible for nearly 40% of all copyright claims filed in 2014 (https://www.techdirt.com/articles/20140517/06552727268/one-single-porn-copyright-troll-malibu-media-accounted-nearly-40-all-copyright-lawsuits-this-year.shtml).

Plaintiff again seeks to take advantage of the threat of an award of statutory damages, attorneys' fees, ignorance about copyright law, and the stigma associated with accessing pornography via the internet to extract quick and profitable settlements. This Court has specifically and directly condemned for-profit copyright litigation models against individuals. Righthaven, L.L.C. v. Hill, No. 1:11-cv-00211 (D. Colo. Apr. 7, 2011) (J. Kane), Dkt. 16 ("Plaintiff's wishes to the contrary, the courts are not merely tools for encouraging and exacting

settlements from Defendants cowed by the potential costs of litigation and liability.") Although Plaintiff does not rely on the same business model as the Righthaven model, Plaintiff does seek to exact settlements from numerous Defendants sued in a John Doe capacity in an amount to which mounting a defense in Court is less economically efficient than settling out of court.

In light of the aforementioned authority, in its following argument, Defendant requests that the Court quash Plaintiff's subpoena and dismiss Defendant from this lawsuit.

Moreover, because of the scandalous subject matter involved, the unique procedural posture of so many misjoined Defendants, identical cases now pending before the Court, and massive potential liabilities, that-if Plaintiff's joint and several liability theories are to be credibly believed could result in excess of several million dollars based solely on questionable allegations of what can only be described at best as de minimis acts – the need to cautiously evaluate the various substantive and procedural safeguards is paramount.

Unfortunately, as has been demonstrated in similar actions around the country, some Plaintiffs in mass-copyright infringement lawsuits have at times failed to regard substantive and procedural safeguards implemented as Federal law to protect potential Defendants. The present case is no different because Plaintiff has misjoined all twenty-three (23) Defendants to avoid the cost of appropriately filing individual cases against each John Doe Defendant.

Plaintiff's subpoena is also invalid on its face. The technology and methods utilized to identify potential Defendants are highly unreliable, leading to a significant risk of misidentification. The technology used by Plaintiffs fails to consider important factors such as persons masking false Internet Protocol ("IP") addresses, persons with hacked or open wireless networks, or computers that have been hacked by others and able to be controlled remotely. Rather, Plaintiff's technology involves use and monitoring of the Bit Torrent network to identify and collect United States IP addresses whom are allegedly downloading the content and sending those IP addresses to be added to a John Doe lawsuit for copyright infringement. Plaintiff's subpoena also impermissibly subjects Defendant to unwarranted annoyance and embarrassment. Accordingly, the present subpoena must be quashed to avoid considerable injustice.

## LEGAL STANDARDS

### 1. AUTHORITY TO QUASH SUBPOENAS

Pursuant to Rule 45(c)(3), a Court must modify or quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies, or subjects a person to an undue burden." A court may modify or quash a subpoena that, inter alia, requires disclosing confidential information.

Moreover, Fed. R. Civ. Pro Rule 26(c)(1), instructs the Court to limit the frequency or extent of discovery otherwise allowed by the Rules, or by local rule, if it determines that… "the burden or expense of the proposed discovery outweighs the likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of discovery in resolving the issues."

### 2. STANDING

A party has standing to challenge a subpoena issued to a third party when the party has a personal or proprietary interest in the information sought by the subpoena. See Washington v. Thurgood Marshall Acad., 230 F.R.D. 18, 21 (Dist. D.C., 2005).

## ARGUMENT: PLAINTIFF'S SUBPOENA MUST BE QUASHED

### A. Defendant has Standing to Challenge the Subpoena Because Defendant Has a Personal Interest in the Subpoenaed Matter

A party has standing to challenge a subpoena issued to a third party when the party has a personal or proprietary interest in the information sought by the subpoena. See Washington v. Thurgood Marshall Acad., 230 F.R.D. 18, 21 (Dist. D.C., 2005). Here, because the subpoena issued to Insight Communications seeks Defendant's personally identifying information, Defendant undoubtedly has a "personal interest" in the information sought by the subpoena. Further, f Defendant's name is turned over by Insight Communications, Plaintiff, as part of their business model will quickly seek several settlements that amount to thousands of dollars each, with no serious intention of naming any Defendants. If an identified Doe has a "personal or proprietary interest" sufficient to pay several thousand dollars under the threat of litigation and public exposure, certainly Defendant has a "personal or proprietary interest" sufficient to object prior to that disclosure. Accordingly,

Defendant has standing to challenge the subpoena.

## B. Plaintiff's Subpoena Must be Quashed on the Basis of the Lack of Reliability relating to IP Address and MAC Address Tracking Technology

Plaintiff's subpoena must be quashed because the technology used to identify individual Defendants for the alleged copyright infringement is unreliable and is insufficient to show a volitional act of copyright infringement. The public IP address Plaintiff provided the court only correlates to the immediate location of the Internet service and who pays the Internet Service Provider (ISP). This is due to the fact that a majority of homes and small businesses today use a Wireless Firewall/Router (WFR) to share the Internet connection to systems at their location. The WFR allows multiple wired and wireless connections from computers (some possibility unauthorized); all using the same Public IP address Plaintiff has collected. As the wireless signal of the WFR commonly extends outside the residence, it is not unusual for unauthorized systems to connect to it. Some ISP subscribers (Doe defendants) may have run their wireless Internet connection open (no password required), so anyone could have connected to it and downloaded Plaintiff's movie. Even if an ISP subscriber secures the wireless Internet connection with a password, there are various vulnerabilities that could be exploited to gain access to it.

Possible claims of negligence on the part of Doe defendants in not securing an Internet connection or by not monitoring what occurs on it are baseless. There is no legal duty or contractual obligation between the defendants and Plaintiff to require such action.

Moreover, to prove a claim for infringement, a Plaintiff must demonstrate that the Defendant copied the protected work. Kelly v. Ariba Soft Corp., 336 F.3d 811, 817 (9th Cir. 2003) ("the Plaintiff must show ownership of the copyright and copying by the Defendant."), and that the copying was a result of a volitional act. See Religious Tech Ctr. v. Netcom On-Line Commn'n Servs., Inc., 907 F. Supp 1361, 1369-1370 (N.D. Cal. 1995). However, Plaintiff's allegations are highly suspect and do not, and cannot account for numerous issues, including unsecured wireless networks, fraudulently broadcasted IP addresses, computer hacking, and more. Courts again have touched on this simple yet very logical assertion, that an IP address does not necessarily constitute a copyright infringer.

Two 2011 Federal court filings from defendants in a similar California copyright infringement case (3:11-cv-02766-MEJ, Northern District of CA, Patrick Collins v. Does 1-2590, Documents 22 and 52), show how weak the Public IP address is in identifying the actual copyright infringers.

Additionally, It's likely that cases of this kind so rarely proceed to trial since questions are bound to be raised about (1) who collected the BitTorrent evidence, (2) what is their qualifications and certifications, and have these methods been independently tested and evaluated. The methods Plaintiff has used in tracking outward-facing IP addresses have never been subjected to a real, legal test vis-à-vis the Daubert Standard.

Moreover, Plaintiff also has the ability to pursue the Defendants in a much less intrusive manner than their current dragnet approach. Prospective Plaintiffs can file through the various ISPs notices of infringement, wherein the ISP relays via email the notice of infringement to the prospective Defendant. Plaintiffs can then attempt to settle with Defendants in a manner less expensive for all parties. If the potential Defendants fail to comply with Plaintiffs requests for settlement, Plaintiffs can then choose to sue the individuals who fail to comply. This method employed by other copyright enforcement groups creates much less of a dragnet, allows potential Defendants to remain anonymous, reduces costs to all parties, preserves precious judicial resources, and allows Plaintiffs to more efficiently identify Defendants and settle without resorting to numerous Federal lawsuits.

Based on the technological ease with which innocent individuals can be so easily falsely identified, the information in the subpoena should be viewed with skepticism. For example, when a neighbor, unbeknownst to the subscriber, illegally enables a Bit Torrent client downloading copyrighted material either remotely on the user's computer or through an open wireless internet connection on the user's network a subscriber can unknowingly be identified and caught up in the dragnet.

In the present circumstances, Defendant does not have Bittorrent installed on her computer, and has never used Peer-to-Peer software. Furthermore, Defendant is in fact a Jane Doe who has never viewed Plaintiff's work. Thomas M. Rose, a federal judge in this very district has vacated his decisions granting *ex parte* discovery orders to Malibu Media and their representative Yousef Faroniya, citing

imprecise and self-serving practices (http://fightcopyrighttrolls.com/2014/07/07/an-ohio-judge-thinks-that-malibu-medias-pleadings-are-sloppy-vacates-his-previous-orders-granting-discovery/). Finally, there is an alternative method of copyright enforcement that Plaintiff could utilize which is less expensive than the current means relied on by Plaintiff's broad sweeping approach. Couplec with the devastating effect of a false accusation of infringement of pornographic materials, Plaintiff's allegations fail to provide sufficient accuracy, nor an actual volitional act associated to a Defendant sufficient to support its claim, and Plaintiff's subpoena should be quashed.

## C. The Subpoena Should be Quashed to Protect Defendant from Unreasonable Annoyance and Public Embarrassment

The Court must quash the present subpoena against Defendant to prevent Defendant from suffering unwarranted annoyance, embarrassment, and an undue burden. Fed. R. Civ. Pro. 45(c)(3)(A)(iv). Presently, Plaintiff requires Defendant's confidential personally identifying information from Defendant's ISP so that Plaintiff can harass Defendant into coercing a quick and profitable settlement under the guise of publicly outing Defendant regarding an accusation of an unlawful download of pornographic material, despite questionable proof against Defendant.

Plaintiff's subpoena is intended to cause an undue annoyance, embarrassment, and hardship to Defendant, and the same would result if Defendant's personally identifying information were associated without sufficient evidentiary support with the unlawful downloading of pornographic materials. Such association would be highly embarrassing to Defendant, unjustifiably stigmatizing to Defendant, injurious of Defendant's character and reputation as a Colorado state resident, and potentially jeopardizing to Defendant's employment. Moreover, even after Defendant demonstrates that Plaintiff's allegations are false, the embarrassment and reputational damage from Plaintiff's false public claim will persist because of the public record. However, by quashing Plaintiff's subpoena, the Court can prevent the injustice of having Defendant unjustly harmed and embarrassed by questionable and premature accusations of illegally downloading pornographic materials. Given the present facts, the subpoena should be quashed.

## CONCLUSION

WHEREFORE, Defendant respectfully requests that the Court enter an Order quashing the subpoena duces tecum issued to Insight Communications as applied to John Doe Defendant.

John Doe
174.102.111.139

Office of the Clerk
Joseph P. Kinneary US Courthouse Rm. 121
85 Marconi Boulevard
Columbus, OH 43215